IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CV-72-D

|  |  |  |
|---|---|---|
| ALAN PITTS and | ) | |
| SENECA NICHOLSON-PITTS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES HOUSING AND | ) | |
| URBAN DEVELOPMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On February 16, 2012, Alan Pitts ("Pitts") and Seneca Nicholson-Pitts ("Nicholson-Pitts")[1] (collectively "plaintiffs"), proceeding pro se, filed a complaint asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, 42 U.S.C. §§ 1981, 1983, and 1985, and state-law claims against several dozen defendants, relating to a tract of land in Vance County, North Carolina, which plaintiffs contend they own [D.E. 1]. On March 26, 2012, the case was reassigned to this court [D.E. 22]. Between May 3 and August 13, 2012, six defendants filed motions to dismiss [D.E. 42, 51, 55, 63]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiffs about the motions to dismiss, the consequences of failing to respond, and the response deadline [D.E. 53, 58]. On August 15 and September 24, 2012, plaintiffs responded in opposition [D.E. 65, 68]. As explained below, the court grants the

---

[1] To the extent Nicholson-Pitts relies on a power of attorney she signed "regarding all matters involving her interest in the property at issue in this action at bar" to allow Pitts to litigate on her behalf, Compl. 3 n.1, she may not do so. Non-attorneys cannot litigate "matters in the name of others based on claimed authority from some form of 'power-of-attorney.'" Bank of Am. Inc. v. Campbell, No. 1:12CV269, 2012 WL 1951820, *2 (M.D.N.C. May 30, 2012) (unpublished) (collecting cases).

motions to dismiss. Moreover, on December 20, 2012, and January 10, 2013, additional defendants filed motions to dismiss or for summary judgment [D.E. 69, 76]. Plaintiffs' time to respond to these motions has not yet run. Nonetheless, as explained below, the court grants those motions as to any federal claims. Finally, the court declines to exercise federal jurisdiction over any state-law claims against any non-federal defendant, and those claims are dismissed without prejudice.

I.

Plaintiffs' complaint is 62 pages long and is not a model of clarity, see Pitts v. O'Geary, No. 5:12-CV-343-D, [D.E. 37] 1 (E.D.N.C. Dec. 17, 2012) (unpublished), but concerns the sale and ownership of three adjacent lots of land on Cross Creek Road in Vance County, North Carolina. In 2007, following a foreclosure sale, defendant United States Department of Housing and Urban Development ("HUD") acquired title to some portion of the land at issue. See, e.g., Compl. 6; Compl., Ex. C [D.E. 1-2] (deed). Plaintiffs acknowledge that defendants Kermit and Faye Thompson own one of the lots ("Lot 1"), but assert that defendant Substitute Trustee Inc. sold the remaining two lots to HUD, and that plaintiffs then purchased both of those lots from HUD. Compl. 6–8 & Exs. C–D, G. Plaintiffs reside on one of the remaining lots ("Lot 2"), and assert that defendants "Three John Doe White Males . . . are currently occupying and constructing a shelter upon the real property at issue [("Lot 3")] and belonging to Plaintiffs in violation of their constitutional rights, and their right to fair housing." Compl. 8, 12.

Plaintiffs contend that they are victims of "a b[roa]d range conspiracy to defraud the United States Government, certain innocent banks/financial institutions, certain investment firms, certain insurance companies, investors and home buyers in violation of the RICO statute." Compl. 3. Plaintiffs further assert that defendant Vance County Clerk of Court lacked jurisdiction to conduct a foreclosure hearing and therefore her order "allowing for the foreclosure of the deed of trust and

2

the sale of the property was a void judgment." Plaintiffs also assert that defendants Cynthia Abbott and the Vance County Register of Deeds "failed to properly record, index and cross-index said titles and other instruments, and accordingly establish reliable records of lawful conveyances, ownership and transfers [and] failed to convey information to the office of the tax assessor" concerning Lot 3 and conspired with such persons including attorney Lori Renn "to unlawfully obtain property and create the appearance of ownership, resulting in non-marketable titles, confusion and uncertainty in the Vance County Registry and related real estate records and markets." Id. 3, 11. As a result of defendants' actions and inactions, plaintiffs contend they suffer "a cloud on [their] property interest and rights." Id. 51–52. Plaintiffs describe this action as

> combined Lis Pendens and claims of violations of the Rico statute, 18 U.S.C. §1962 (c) and (d), Conspiracy to Violate RICO, Civil Fraud, Bank Fraud, Mail Fraud, Wire Fraud, Securities' Fraud, Civil Rights violations, action at Quiet Title, Attorney Malpractice and Attorney Negligence, violations of both the Federal and North Carolina Fair Housing Act, violations of 42 U.S.C. §§1981, 1983 and 1985, Material Alteration, Breach of Contract and Unauthorized Practice of Law.

Id. 2.

II.

The moving defendants seek dismissal on several grounds, including Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Thus, the court turns first to the question of subject-matter jurisdiction.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan

3

River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). Because plaintiffs assert that this court has subject-matter jurisdiction, they must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647.

Defendant Vance County Clerk of Court argues that the Rooker-Feldman doctrine bars plaintiffs' federal claims. [D.E. 56] 4–6. The Rooker-Feldman doctrine prohibits a "party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Washington v. Wilmore, 407 F.3d 274, 279 (4th Cir. 2005) (quotation omitted). "The Rooker-Feldman doctrine bars lower federal courts from considering not only issues raised and decided in state courts, but also issues that are 'inextricably intertwined' with the issues that were before the state court." Id. (quoting D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 486 (1983)). Moreover, "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside the jurisdiction of the federal district court." Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006).

The Rooker-Feldman doctrine encompasses "not only review of adjudications of the state's highest court, but also the decisions of its lower courts." Brown & Root, Inc. v. Breckenridge, 211 F.3d 194, 199 (4th Cir. 2000) (quotation omitted). Rooker-Feldman "reinforces the important principle that review of state court decisions must be made to the state appellate courts, and

4

eventually to the Supreme Court, not by federal district courts or courts of appeal." Id. (quotation omitted). "The doctrine [also] preserves federalism by ensuring respect for the finality of state court judgments." Washington, 407 F.3d at 279.

The Rooker-Feldman doctrine is a "narrow doctrine." Lance v. Dennis, 546 U.S. 459, 464 (2006). The doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); see Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011). For the doctrine to apply, the party seeking relief in federal court must be asking the federal court to "'reverse or modify' the state court decree." Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quoting Exxon Mobil, 544 U.S. at 284). Accordingly, the court "examine[s] whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself. If [the state-court loser] is not challenging the state-court decision, the Rooker-Feldman doctrine does not apply." Davani, 434 F.3d at 718 (footnote omitted); see Washington, 407 F.3d at 280.

Here, plaintiffs "move for a verdict or declaration which will Quiet Title," seek a declaratory judgment "void[ing] all resulting instruments based upon acts of the clerk taken in want or excess of jurisdiction," and specifically ask this court to "set [a state] Order aside." Compl. 52, 61. Thus, plaintiffs' complaint challenges the state-court decisions concerning ownership of the real property at issue. See Adolphe v. Option One Mortg. Corp., No. 3:11-cv-418-RJC, 2012 WL 5873308, at *4 (W.D.N.C. Nov. 20, 2012) (unpublished); Watkins v. Clerk of Gaston Cnty. Super. Ct., Civil Action No. 3:12-CV-033-RJC-DCK, 2012 WL 5872751, at *5-6 (W.D.N.C. July 10, 2012) (unpublished), report and recommendation adopted, 2012 WL 5872750, at *4-6 (W.D.N.C. Nov. 20, 2012)

5

(unpublished).² Simply put, this court lacks subject-matter jurisdiction to sit in direct review of North Carolina's trial courts, which includes the decision of a Clerk of Court in a state foreclosure action. See, e.g., Brown & Root, Inc., 211 F.3d at 199; Jordahl v. Democratic Party of Va., 122 F.3d 192, 202–03 (4th Cir. 1997).

Alternatively, to the extent that plaintiffs' federal claims are not "inextricably intertwined" with a state court decision, the court concludes that dismissal is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. A court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

To the extent that plaintiffs assert any claim pursuant to 42 U.S.C. § 1983, "[t]o state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and

---

² Many portions of plaintiffs' complaint are strikingly similar to the complaint in Watkins. Compare Compl. 20–21, 40, 41, 43, 49–50, 52–61 with Watkins, No. 3:12-CV-033-RJC-DCK, [D.E. 1] 6–7, 11–23 (W.D.N.C. Jan. 24, 2012) (complaint).

6

laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see Filarsky v. Delia, 132 S. Ct. 1657, 1661–62 (2012); Philips, 572 F.3d at 180. Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Iqbal, 556 U.S. at 676; Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Claims which sound in negligence largely are not actionable under section 1983. See Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Pink v. Lester, 52 F.3d 73, 77–78 (4th Cir. 1995). Moreover, section 1983 does not impose liability for violations of duties of care arising under state law. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 201–02 (1989).

Plaintiffs have failed to plausibly identify any violation of the United States Constitution. To the extent plaintiffs assert that any of the acts they complain of were racially discriminatory in nature, the equal protection clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiffs have not stated that they were treated differently from any person with whom they are similarly situated. Although pro se litigants are held to less stringent pleading standards than attorneys, the court is not required to accept as true legal conclusions or unwarranted factual inferences. See, e.g., Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555; Coleman, 626 F.3d at 190. Plaintiffs have not made plausible allegations to support any equal protection claim. See, e.g., Coleman, 626 F.3d at 190–91. Thus, plaintiffs have failed to state a claim upon which relief may be granted, and this claim is dismissed.

Moreover, plaintiffs have named as defendants numerous private actors. Section 1983 "excludes from its reach merely private conduct, no matter how . . . wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quotations omitted). Such a limitation preserves an area of individual freedom by recognizing "that most rights secured by the Constitution are protected only against infringement by governments." Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982) (quotations omitted). Sometimes, a private party's actions may be deemed "state action," but only when "the state has so dominated such activity as to convert it to state action." Philips, 572 F.3d at 181. "Mere approval of or acquiescence in the initiatives of a private party is insufficient." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 616 (4th Cir. 2009) (quotations omitted). Plaintiffs have failed to plausibly allege or demonstrate state action by any of the private defendants.

As for plaintiffs' civil conspiracy claim pursuant to 42 U.S.C. § 1985(3), plaintiffs must allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiffs'] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996). Conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore fail to state a claim. See, e.g., Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Plaintiffs fail to plausibly allege a "meeting of the minds" between any of the named defendants to violate their constitutional rights. Cf. Iqbal, 556 U.S. at 678–79. Thus, plaintiffs fail to state a claim for civil conspiracy. Plaintiffs likewise fail to state a claim under section 1981. See Watkins, 2012 WL 5872751 at *10; see also Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476–77 (2006); Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018 (4th Cir. 1999); Dennis v. Cnty. of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995).

To the extent plaintiffs seek to assert a RICO claim, RICO provides civil remedies "when a plaintiff has suffered an injury to his business or property as a result of a violation of section 1962."

Alley v. Angelone, 962 F. Supp. 827, 832 (E.D. Va. 1997). A RICO plaintiff must plead that the defendants engaged in or conspired to engage in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted); US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317–18 (4th Cir. 2010). A RICO plaintiff also "must adequately plead at least two predicate acts of racketeering." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004). Here, plaintiffs' wholly conclusory allegations concerning predicate acts are nothing more than mere "labels and conclusions." Iqbal, 556 U.S. at 678; see Giarratano, 521 F.3d at 304 n.5. Thus, plaintiffs' RICO claim fails. See Adolphe, 2012 WL 5873308 at *7; Watkins, 2012 WL 5872751 at *7.

To the extent plaintiffs assert a "Fair Housing Act" claim, plaintiffs' allegation that various defendants "did or attempted to do, and/or conspired to do, in some way or degree, obstruct the rights of Plaintiffs and others to obtain fair and affordable housing," Compl. 49, fails to state a claim. See Watkins, 2012 WL 5872751 at *8. Thus, the court dismisses the claim.

Finally, in light of the dismissal of plaintiffs' federal claims, the court declines to exercise supplemental jurisdiction over any state-law claims they may have asserted against any non-federal defendant, and dismisses those claims without prejudice. 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

III.

In sum, the court GRANTS the motions to dismiss [D.E. 42, 51, 55, 63], GRANTS the remaining motions [D.E. 69, 76] to the extent that they relate to federal claims, and DISMISSES plaintiffs' federal claims pursuant to Federal Rule of Civil Procedure 12(b)(1), or alternatively, Rule

9

12(b)(6). The court declines to exercise supplemental jurisdiction over any state-law claims against any non-federal defendant and DISMISSES plaintiffs' state-law claims against any non-federal defendant WITHOUT PREJUDICE. The Clerk of Court shall close the case.

SO ORDERED. This **18** day of January 2013.

JAMES C. DEVER III
Chief United States District Judge